IN RE SAYLOR.

*Mr. Jim Rimedio,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Richard C. Slavin,* for appellee.

(No. 82-024—Decided May 5, 1982.)

Court of Claims of Ohio.

BAYNES, Judge.[1] On March 9, 1978, the victim, Imogene Saylor, was assaulted and robbed in Cincinnati, Ohio. The single commissioner, in an opinion and order dated November 11, 1980, granted the applicant $20.75; an amount representing the applicant's net unreimbursable economic loss by way of work loss. In an order dated October 15, 1981, a panel of three Court of Claims Commissioners affirmed the opinion and order of the single commissioner. The panel's order was appealed and a hearing was held before this court on March 9, 1982. Appellant in

---

[1] Attorney-Administrative Assistant Rich Nathan's collaboration is acknowledged.

essence assigns as error that the determination of the panel is unreasonable and unlawful.

## I. FACTS

The facts may be fairly summarized as follows. For at least one year before the assault, the victim had been suffering from abdominal distension and some abdominal discomfort. The victim knew she had a pelvic mass and stated that she was advised to have surgery one year before the assault. On March 9, 1978, the assailant knocked the victim to her knees. The next day, March 10, 1978, the victim was admitted to Deaconess Hospital where she complained of abdominal pain. During a physical examination, the presence of a mass in the lower abdomen and pelvis was again confirmed. X-rays were taken and afterwards the victim complained of increased abdominal pain. Dr. Jacobs decided to perform an exploratory laparotomy. During surgery a huge nodular tumor was found in the victim's uterus. The tumor was a leiomyoma with signs of degeneration.

Two days after the surgery, the victim spiked a fever of 102.4 degrees. On the morning of March 14, 1978, the victim became hypotensive with a very fast pulse rate. She was transferred to the intensive care unit where she was diagnosed as suffering from possible acute tubular necrosis. After a nephrology consultation, the victim was transferred to Christ Hospital for hemodialysis.

While at Christ Hospital, additional exploratory surgery noted a perforation of the victim's distal small bowel. The victim remained for a long period of time in Christ Hospital for renal dialysis. She was also treated for hypercalcemia and hyperthyroidism during her stay. The victim was finally discharged from Christ Hospital on December 5, 1978, almost nine months after the date of the assault. Since the time of her discharge, the victim has been disabled and may remain so for the rest of her life. She is forced to be on permanent kidney dialysis and is completely bedridden.

## II. FACTUAL ANALYSIS

The three commissioner panel provided no findings of fact with its opinion. In affirming the single commissioner, the panel implicitly must have found as follows. First, that the criminally injurious conduct did not cause the victim's uterine leiomyoma. Rather, the tumor had been diagnosed at least one year before the assault. The evidence on this first point is uncontroverted. Second, that the perforation of the victim's distal small bowel (and the complications following this perforation) did not directly result from the assault but was instead caused by the initial surgical procedure (i.e., the laparotomy and hysterectomy). Like the woman in the Scriptures, this unfortunate victim was found "to have suffered much under many physicians, and spent all that she had, and did not get better but rather grew worse." See Mark 5:26.

Admittedly, there was conflicting evidence concerning whether the perforation of the victim's distal small bowel occurred during the initial surgery or directly resulted from the assault. One of the victim's doctors who performed during the initial surgery, stated:

"It can be conjectured however, that perhaps due to her fall the enlarged pelvic uterus might have pinched this portion of the bowel against her spine resulting in some changes that did not manifest themselves until several days later***."

By way of contrast Dr. Thomas Stevenson, in a letter to the Attorney General, stated:

"The time sequence strongly suggests that the injury to the bowel occurred during the initial surgical procedure *** the possibility of damage to the bowel by the leiomyoma at the time of injury seems to be a unique explanation."

Concerning the problem of conflicting

testimony this court in a recent decision, *In re Bertram* (January 28, 1982), V79-3407sc, affirmed jud. (April 23, 1982), No. 82-023, stated:

"As noted in *In re: Warner,* V78-3326sc, (2-25-81), affirmed jud, (2-1-81), No. 81-043: 'A court, on appeal from a determination of fact, is not permitted to substitute its judgment and, for that reason alone, find the judgment of the trier of the fact has been made against the manifest weight of the evidence. *Levin* v. *Nielsen,* (12-27-73), 37 Ohio App 2d 29, 31 [66 O.O. 2d 52, 53] citing *Cross* v. *Ledford,* (5-26-54) 161 Ohio St. 469; 3 O.Jur 3rd Appellate Review, 174, Sec. 595. See also *In re: Matin,* V78-3410sc (3-30-79) affirmed jud. (3-13-80), No. 80-067; *In re: Steiner,* V77-0823tc, (10-29-79), affirmed jud (6-12-80), No. 80-015; *In re: Hobbs,* V79-3345sc (4-21-80), affirmed jud (5-28-81), No. 81-012; and *In re: Miller,* V80-32095sc (8-15-80), affirmed jud (9-14-81), No. 81-022.' cf. *Erndt* v. *Medical College of Ohio,* (2-4-82) 81AP-742, Tenth District Ct. Apls., unreported, Ct Cls No. 80-0370-2."

We find that the panel's determination concerning the cause of the victim's bowel perforation (*i.e.,* the initial surgery) was not against the manifest weight of the evidence. Accordingly, we will not substitute our judgment for the panel's determination.

### III. *LEGAL ANALYSIS*

The applicant, in his notice of appeal to the order of the panel of commissioners argues that even if the perforation of the victim's distal small bowel and the resultant medical complications were caused during the initial surgery, such surgery (though negligent) would not diminish the liability of a tortfeasor in a civil action. Likewise, the state, standing in the position of the tortfeasor, ordinarily ought to be liable for all foreseeable consequences of a criminal attack, including those following from possible medical malpractice.

The operative statutory language is found in R.C. 2743.52 which reads:

"The court of claims commissioners that are appointed pursuant to section 2743.54 of the Revised Code have jurisdiction to make awards of reparations for economic loss *arising from* criminally injurious conduct, if satisfied by a preponderance of the evidence that the requirements for an award of reparations have been met." (Emphasis added.)

The applicant has not provided the court with a single legal citation for the proposition that the words "arising from" in the above cited statute ought to be read as expansively as the proximate cause concept in tort law. We note, first of all, that despite the applicant's contrary arguments, the state is not viewed by the Act as standing in the shoes of the tortfeasor. Awards do not embrace all damages (as would a civil action judgment) but only such as constitute "economic loss" under R.C. 2743.51(E). Not all tortious conduct by the tortfeasor will give rise to an award but only such as constitutes "criminally injurious conduct" pursuant to R.C. 2743.51(C). Further, even if the victim suffers "economic loss" arising from "criminally injurious conduct," an award is not thereby made absolute or positively certain.

"*** [t]he right (to the extent that an award constitutes a right) is to make an application and, [only] if all statutory conditions are met, [may a victim] receive an award." *In re Johns,* V80-39821sc, affirmed jud. (November 20, 1981), No. 81-038.

Assuming, *arguendo,* that within these cited restrictions, the words "arising from" are to be read as expansively as proximate causation in tort law, would the applicant in that case recover for the cost of removing the uterine leiomyoma and damages flowing from possible medical malpractice?

4

We agree with the applicant's argument that if a person suffers personal injuries which thereafter are aggravated by the malpractice of an attending physician, such aggravation is the proximate result of the negligence of the original tortfeasor and he is liable for all damages including those flowing from the malpractice. *Tanner* v. *Espey* (1934), 128 Ohio St. 82.

It is also clear however, that a tortfeasor is not liable if the plaintiff's damages (including malpractice) sprang from a pre-existing condition that was not aggravated by the tortfeasor. Thus in *Martin* v. *Cincinnati St. Ry. Co.* (1938), 61 Ohio App. 375 [15 O.O. 257], a judgment against the defendant trolley car company for subsequent injuries to plaintiff was reversed, where it was found that all such injuries flowed from plaintiff's pre-existing condition described as adenoma of the thyroid gland. Such condition was not aggravated by defendant's tort. Plaintiff was entitled to collect only for those injuries proximately caused by the defendant tortfeasor.

We find this case to be much like *Martin, supra*. The malpractice, if any, resulted from a needed operation on a pre-existing uterine leiomyoma. All medical evidence in the record before us concurs that the tumor was not caused by the offender's conduct. Similarly, the evidence concurs that the tumor grew no larger, did not degenerate or rupture, nor grew more dangerous to the victim's health as a result of the offender's conduct. One doctor did state that the victim's pelvic pain may have been exacerbated as a result of the assault. This is an insufficient basis for an additional award beyond that already granted. Where the condition is not aggravated by a tort but merely becomes more evident or subject to discovery as a result of the tort, the tortfeasor is not liable for injuries related to the pre-existing condition. Thus in *Stephens* v. *Continental Ins. Co.* (La. App. 1978), 364 So. 2d 192, the Louisiana Court of Appeals found that:

"Where there was no showing that a pilonidal cyst was in any way aggravated by an automobile accident, although discovery of its existence might have been attributable thereto, and an operation to remove cyst was necessitated by infection, which neither the examining doctor nor surgeon could relate to the accident, the plaintiff was not entitled to recover for removal of cyst in a suit for injuries arising from the automobile accident." (Headnote.)

We find that even if we read R.C. 2743.52 to include the expansive tort concept of proximate causation, the applicant is not entitled to recover any additional award beyond that granted by the three commissioner panel.

IV.

We therefore find the assignment of error that the order appealed from is unreasonable and unlawful is not well taken and should be overruled. The order of the three commissioner panel affirming the order of the single commissioner will, accordingly, be affirmed.

*Order affirmed.*