[Cite as *State v. Machuca*, 2016-Ohio-254.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO.  1-15-01

    v.

ORLANDO MACHUCA,                  O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Allen County Common Pleas Court
Trial Court No. 20140085

Judgment Affirmed

Date of Decision:   January 25, 2016

---

APPEARANCES:

    *Michael J. Short* for Appellant

    *Jana E. Emerick* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Orlando Machuca ("Appellant"), appeals the Judgment of the Court of Common Pleas of Allen County convicting him of burglary and domestic violence and sentencing him to nine years and six months in prison. On appeal, Appellant argues that (1) his constitutional right to a speedy trial was violated; (2) the trial court erred in admitting evidence under Evid.R. 404(B); and (3) the trial court erred in denying his motion for new counsel. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On February 27, 2014, a criminal complaint was filed in the Lima Municipal Court charging Appellant with one count of domestic violence in violation of R.C. 2919.25(A), a felony of the third degree. The complaint stemmed from an incident in which Appellant allegedly entered the home where his estranged wife, Tracie Machuca (Tracie), was staying and assaulted her.

{¶3} Later that day, Appellant appeared in court and bond was set at $500,000 cash or surety. Appellant did not post bond.

{¶4} On March 7, 2014, a preliminary hearing was held, and ultimately, the case was bound over to the Court of Common Pleas of Allen County.

{¶5} On April 17, 2014, the Allen County Grand Jury indicted Appellant on one count of burglary in violation of R.C. 2911.12(A)(1), a felony of the first degree; one count of domestic violence in violation of R.C. 2919.25(A), a felony

of the third degree; and one count of failure to comply in violation of R.C. 2921.331, a felony of the fourth degree. The indictment further alleged that Appellant had two prior convictions for domestic violence arising out of Lima Municipal Court and Newton County Circuit Court[1].

{¶6} On April 25, 2014, Appellant was arraigned and pleaded not guilty. Appellant did not post bond.

{¶7} On May 7, 2014, a pre-trial hearing was held. After Appellant's court-appointed attorney, Steve Chamberlain, stated that Appellant did not want to waive his right to a speedy trial, a jury trial was set for May 27, 2014, the last day allowable under Ohio's speedy trial statute.

{¶8} On May 16, 2014, a hearing was held concerning Chamberlain's continued appointment. At the hearing, Chamberlain requested to withdraw as counsel, citing a conflict of interest. The trial court granted Chamberlain's request and informed Appellant that it would appoint a new attorney who was "available to have a trial on the twenty-seventh." May 16, 2014 Hrg., p. 9. That same day, the trial court appointed Jerry Pitts.

{¶9} On May 20, 2014, Pitts filed a motion to continue, and a hearing was held later that day. At the hearing, Pitts explained that Appellant's case presented several unresolved evidentiary issues, including whether Appellant's history of

---

[1] No state was designated for the Newton County Circuit Court.

domestic violence was admissible. Appellant opposed Pitts's motion, stating that he "want[ed] tried [May 27, 2014]." May 20, 2014 Hrg., p. 4.

{¶10} On May 21, 2014, the trial court granted Pitts's request for a continuance and rescheduled Appellant's trial for June 9, 2014. In doing so, it relied on the Ohio Supreme Court's finding that trial counsel may waive a defendant's right to speedy trial for reasons of trial preparation, even without a defendant's consent. *State v. McBreen*, 54 Ohio St.2d 315, 320 (1978).

{¶11} Later that day, the State filed a notice of intent to introduce evidence of prior instances of domestic violence between Appellant and Tracie pursuant to Evid.R. 404(B). According to the State, the evidence established Appellant's identity, intent, and purpose.

{¶12} On May 23, 2014, Pitts filed a motion to exclude all evidence relating to Appellant's history of domestic violence arguing that the evidence was inadmissible under Evid.R. 404(B). He further argued that the evidence was unfairly prejudicial under Evid.R. 403(A).

{¶13} The trial court denied Appellant's motion, finding that the evidence was admissible for purposes of establishing Appellant's "motive, opportunity, intent or plan[.]" In doing so, it noted that "the other acts evidence at the very least relates to the tumultuous or strained relationship between [Appellant] and the

victim, [Tracie], and particularly the action of [Appellant] as they relate to the relationship and pattern of abuse." (Docket No. 140, p. 4.).

{¶14} On May 29, 2014, Pitts filed a motion requesting that Appellant undergo psychiatric evaluation. Pursuant to court order, Appellant was sent to the Forensic Psychiatry Center for Western Ohio in Dayton, Ohio for evaluation, and the trial court vacated all scheduled proceedings pending the results of Appellant's evaluation.

{¶15} On June 24, 2014, the trial court received a letter from Appellant stating, in relevant part:

> The date of [Chamberlain's] withdrawal was May 16, 2014. And I was then appointed [Pitts] the same day. [Pitts] informed me the same day that he would bring me my file and all discovery material on May 19. He never came. [Pitts] did come on May 20, but only wanted me to sign a time waiver, and refused to look at or discuss my case and discovery material. After I insisted that we discuss these things, he left angry because I would not sign a time waiver. He then returned about 15 minutes later and told me he filed a motion for a continuance. I told him "I said no, you did this against my will?"
>
> * * *
>
> We had further disagreements because he refused to be honest with me and help me prepare for trial. He kept making excuses of having other cases and no time to work on my case. * * * So I fired him. * * * On May 30 my docket was accessed over the phone and an entry for a motion was filed without my consent. Then on June 5 [Pitts] came * * * one day before trial and tried to get me to get a mental evaluation because he was not prepared for trial, but at this point he was already fired, and I told him not to do anything further on my behalf and without my permission.

July 1, 2014 Hrg., Court's Ex. AA, p. 1-2.

{¶16} On July 1, 2014, a hearing was held, and based on the complaints set forth in his letter, Appellant requested a new, court-appointed attorney. In response, Pitts explained that Appellant did not appreciate the amount of work that was needed to prepare his case for trial. Pitts stated that "it wasn't simple enough for me to walk in the court according to [Appellant's] wishes and cross examine [Tracie] because supposedly she was a liar." July 1, 2014 Hrg., p. 17. To that end, the State acknowledged that "[Appellant's] argument focuses on what are quite clearly disagreements as to trial strategy." *Id.* at 22. Ultimately, the trial court denied Appellant's request noting that the relationship between Pitts and Appellant had not broken down to such a degree that it warranted substitution of counsel.

{¶17} Thereafter, Appellant agreed to be re-evaluated, and the report concluded that Appellant was (1) competent to stand trial and (2) not under the influence of a severe mental disease or defect of the mind at the time of the alleged offense and knew the wrongfulness of his actions.

{¶18} On October 14, 2014, a jury trial commenced, and Tracie testified to the following events, in relevant part:

{¶19} Tracie explained that in fall 2012 she moved from Lima, Ohio to Miami, Oklahoma, with the hope of starting a new, drug-free life. When she

arrived in Oklahoma, she moved in with her father and began working full-time at a factory in Joplin, Missouri. There, she met Appellant, and a few months later, the two were married.

{¶20} Upon their marriage, Tracie stated that Appellant became physically abusive. In early 2013, she moved out of the marital home, after Appellant threw a phone at her head, splitting it open.

{¶21} At her father's request, Tracie began taking alternative routes to and from work in order to avoid contact with Appellant. However, in June 2013, Tracie spotted Appellant's vehicle as she was getting off the highway. In attempt to avoid him, she quickly made an illegal U-turn and got back on the highway. She explained:

> I was going maybe 80 miles an hour. And I thought he was gone. I was just trying to get away. I wasn't really looking in my mirrors. I was just trying to get away. And he—he hit me. He was driving a BMW and he put the side of it into my car three times. I lost control on the third time.

Trial Tr. p. 131.

{¶22} Tracie stated that after she lost control of her car, Appellant got out of his car and came after her, threatening to kill anyone that came to her aid. Tracie ran across the turnpike and climbed over the center concrete barrier to safety. When on-lookers called 9-1-1, Appellant fled the scene but was eventually arrested and charged with assault. Tracie stated that Appellant was released on

bond pending trial, with orders to remain in the state of Missouri and have no contact with Tracie.

{¶23} Tracie stated that following Appellant's release on bond, an incident occurred between Appellant and her father. In response, Tracie stated that she packed her belongings and fled to her mother's home in Ottawa, Ohio. She added that she altered her phone's GPS so that it appeared to be originating from Hawaii, where her sister lived.

{¶24} Tracie stated that she realized Appellant followed her to Ohio when he came to her new job, snuck past security, and began looking for her. Security personnel escorted Appellant off the premises, and the police informed Appellant not to re-enter. However, when Tracie left work later that day, Appellant was waiting outside the building's exterior gate. He tried to get into her car, breaking the door handle in the process. After this encounter, Tracie testified that she "didn't know what happened to [Appellant]." *Id.* at p. 142.

{¶25} Tracie explained that later that month she was driving home when she got stopped by a red light in Lima. As she waited for the light to turn green, her driver's side door was suddenly pulled open. To her surprise, she saw Appellant standing there. Tracie stated that Appellant punched her face, pulled her out of her car, and began dragging her across the pavement. She tried to fight back, as Appellant began hitting her head against the pavement "telling everybody

passing by that [she] was on drugs and he was just here to help [her]" *Id.* at p. 145. After some time, an elderly woman came to Tracie's aid, and Appellant stopped. Appellant was convicted of domestic violence in Lima Municipal Court and extradited back to Missouri to face charges related to the highway incident. After this encounter, Tracie stated that she thought Appellant was "locked up." *Id.* at p. 149.

{¶26} Thereafter, Tracie testified that she moved in with a life-long friend, Michael Hurley. On February 26, 2014, Tracie stated that she was inside Hurley's home cooking dinner when suddenly someone grabbed her by the throat. Tracie stated that, at first, she thought someone was playing a joke on her, until she saw Appellant. A fight ensued, and Tracie began yelling for help. Tracie stated that "[Appellant] drug me through the residence, trying to get me out the door to put me in the car with him." *Id.* at p. 161. The commotion alerted Hurley's son, who was sleeping upstairs, and he threatened to call 9-1-1. Appellant fled. Tracie stated that she and a friend called the police, but before they arrived Appellant came back and began beating on the windows, threatening her. Appellant fled again but was later arrested.

{¶27} Appellant testified that he never harmed Tracie. He admitted going to Hurley's home on February 26, 2014 but denied entering the home or harming

Tracie. He maintained that his past and present actions stemmed from his desire to help Tracie overcome her drug addiction.

{¶28} Ultimately, the jury found Appellant guilty of burglary and domestic violence, and he was sentenced to nine years and six months in prison.[2]

{¶29} It is from this judgment that Appellant timely appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE DEFENDANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL AS A RESULT OF ACTION TAKEN BY TRIAL COUNSEL.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN ADMITTING OTHER ACTS EVIDENCE RELATING TO PRIOR DOMESTIC VIOLENCE INCIDENTS.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED IN NOT APPOINTING SUBSTITUTE COUNSEL TO THE DEFENDANT.**

*Assignment of Error No. I*

{¶30} In his first assignment of error, Appellant claims that he was denied a speedy trial. Specifically, Appellant argues that his Sixth Amendment right to a speedy trial was violated. We disagree.

---

[2] The State dismissed count three of the indictment prior to the start of trial.

**{¶31}** The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to a speedy trial by the state. *Klopfer v. North Carolina*, 386 U.S. 213, 222–223, 87 S.Ct. 988, 18 L.Ed.2d 168 (1967). Article I, Section 10 of the Ohio Constitution and R.C. 2945.71 also provide an accused a speedy trial guarantee. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55 (1996); *State v. Ladd*, 56 Ohio St.2d 197, 200 (1978).

**{¶32}** When a criminal defendant claims a violation of his Sixth Amendment right to a speedy trial, courts apply a "balancing test in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker,* the United States Supreme Court identified the following factors to assess in evaluating speedy-trial violations: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Id.*

**{¶33}** The first factor, the length of the delay, is a "triggering mechanism." *Id.* "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors." *Id.* "[I]n this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647,

652, fn. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). "Courts have generally found post accusation delay 'presumptively prejudicial' at least as it approaches one year." *Id.*; *State v. Miller*, 10th Dist. Franklin No. 04AP–285, 2005–Ohio–518, ¶ 12.

**{¶34}** Here, Appellant was arrested on February 26, 2014, and his trial commenced on October 14, 2014. This seven and one-half month period between Appellant's arrest and trial is not "presumptively prejudicial" within the meaning of the Sixth Amendment, and therefore, the *Barker* enquiry is not triggered. Thus, Appellant's Sixth Amendment right to a speedy trial was not violated.

**{¶35}** Appellant also asks this court to reexamine the Ohio Supreme Court's finding that "a defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." *McBreen*, 54 Ohio St.2d at 320.

**{¶36}** Appellant argues that *McBreen* conflicts with a lawyer's ethical duties under the Rules of Professional Conduct insofar as "a lawyer shall abide by a client's decisions concerning the objectives of representation." Prof.Cond.R. 1.2(a). In a criminal case, these objectives include: the client's decision as to a plea to be entered, whether to waive a jury trial, and whether the client will testify; the rule does not expressly require a lawyer to abide by a criminal defendant's

decision concerning what pre-trial motions are filed. Prof.Cond.R. 1.2(a). Rather, Prof.Cond.R. 1.4(a)(2) requires a lawyer to *reasonably consult* with the client about the means by which the client's objectives are to be accomplished. To that end, any argument relating to whether Pitts reasonably consulted with Appellant within the meaning of Prof.Cond.R. 1.4(a)(2) is outside this court's jurisdiction, as Article IV, Section 2(B)(1)(g) of the Ohio Constitution grants the Ohio Supreme Court with original jurisdiction in these matters.

{¶37} Accordingly, we overrule Appellant's first assignment of error.

*Assignment of Error No. II*

{¶38} In his second assignment of error, Appellant claims that the trial court erred in admitting evidence of prior instances of domestic violence pursuant to Evid.R. 404(B). Specifically, Appellant claims that the evidence is inadmissible to establish his intent.[3] We disagree.

{¶39} Generally, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Evid.R. 404(B). This rule derives from the long-standing principle that "proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio

---

[3] Appellant acknowledges that the fact of his prior convictions is admissible as an element of the current offense, but challenges the admission of the details which were offered to prove intent.

St.2d 66, 68 (1975). Evidence of other crimes, wrongs, or acts is admissible, however, for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B). R.C. 2945.59 also provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶40}** In determining whether evidence of other crimes, wrongs, or acts of the accused is admissible under Evid.R. 404(B), courts apply a three-step test. "The first step is to consider whether the other acts evidence is relevant in making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *State v. Williams*, 134 Ohio St. 3d 521, 2012-Ohio-5695, ¶ 20. Second, courts must consider whether evidence of the other crimes, wrongs, or acts is being presented to prove the character of the accused "in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose." *Id.* The final step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *Id.; see also* Evid.R. 403(A).

{¶41} R.C. 2945.59 and Evid.R. 404(B) are "to be strictly construed against the state, and * * * conservatively applied by a trial court." *State v. DeMarco*, 31 Ohio St.3d 191, 194 (1987). " 'The admission of such [other-acts] evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 66. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16–18 (2d Dist.). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Slappey*, 3d Dist. Marion No. 9-12-58, 2013-Ohio-1939, ¶ 12.

{¶42} "It is a fundamental principle of criminal law that when an accused pleads not guilty to a charge which contains specific intent as an element of the crime, he places intent squarely at issue and the state is required to prove this element beyond a reasonable doubt." *State v. Smith*, 49 Ohio St.3d 137, 141 (1990). " '[P]rior bad acts by a defendant against the same victim are * * * admissible in domestic violence cases to prove the defendant's intent.' " *State v. Blonski*, 125 Ohio App.3d 103, 113 (9th Dist.1997), quoting *State v. Johnson*, 73

Ohio Misc.2d 1, 3 (M.C.1994). However, "When using other acts evidence to show the defendant's intent, the offense for which the defendant is being tried and the other act must have occurred reasonably near to each other and a similar scheme, plan or system must have been utilized to commit the offense at issue and the other offenses." *State v. Elliott*, 91 Ohio App. 3d 763, 771 (3d Dist.1993), citing *Curry*, 43 Ohio St.2d at 73.

{¶43} Here, Appellant was indicted on one count of burglary in violation of R.C. 2911.12(A)(1), which provides that "[n]o person, by force, stealth, or deception, shall * * * trespass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense." At trial, the State was required to prove, beyond a reasonable doubt, that Appellant entered Hurley's home *with the purpose to commit in the home a criminal offense*; according to the State, Appellant entered Hurley's home with the purpose to commit domestic violence.

{¶44} Tracie testified that prior to her attack in Hurley's home, she took affirmative steps to avoid contact with Appellant. These steps included: moving out of their marital home, taking alternative routes to and from work, altering her cell phone's GPS, and moving across state lines. Despite her efforts, Tracie testified that Appellant followed her and repeatedly initiated violent contact (i.e., the highway incident, the workplace incident, the stoplight incident). Although

Appellant denied trying to harm Tracie, he admitted that his repeated efforts stemmed from his desire to help Tracie overcome her alleged drug addiction.

{¶45} Given that these prior acts occurred less than one year from the current incident, involved the same victim, and concerned the same subject matter, we cannot find that the trial court abused its discretion in admitting this evidence to establish Appellant's intent pursuant to Evid.R. 404(B). *See State v. McCoy*, 9th Dist. Summit No. 22373, 2005-Ohio-4262, ¶ 12.

{¶46} Accordingly, we overrule Appellant's second assignment of error.

*Assignment of Error No. III*

{¶47} In his third assignment of error, Appellant claims that the trial court erred in denying his motion for new counsel. Specifically, Appellant claims that his relationship with Pitts had broken down to such degree that there was no attorney-client relationship. We disagree.

{¶48} Substitution of counsel is within the discretion of the trial court. *Wheat v. United States*, 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *State v. Jones*, 91 Ohio St.3d 335, 343 (2001). Thus, we review the trial court's decision under the abuse of discretion standard. *State v. Murphy*, 91 Ohio St.3d 516, 523 (2001).

{¶49} "An indigent criminal defendant has a Sixth Amendment right to competent counsel; however, this constitutional right does not extend to a right to

counsel of the defendant's choosing." *State v. Kirk*, 3d. Dist. Union No. 14-16-28, 2007-Ohio-1228, ¶ 57, citing *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93 (1965). Likewise, the right to counsel does not include a right to a meaningful or peaceful relationship between counsel and the defendant. *State v. Blankenship*, 102 Ohio App.3d 534, 558 (12th Dist.1995), citing *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Instead, an indigent criminal defendant may discharge a court-appointed attorney only "upon a showing of good cause, such as a conflict of interest, a complete break-down in the attorney-client relationship or an irreconcilable conflict which leads to an apparently unjust result." *Blankenship* at 558; *Kirk* at ¶ 58.

**{¶50}** Here, there was a breakdown in communication between Appellant and Pitts, as evidenced by Appellant's letter to the trial court, his statement at the July 1, 2014 hearing, and his unsuccessful attempt to fire Pitts. However, we cannot find that the trial court's refusal to appoint new counsel was unreasonable, arbitrary, or unconscionable in light of the fact that Appellant's complaints stemmed from his erroneous belief that Pitts had violated his right to a speedy trial. Likewise, nothing in the record indicates that Pitts's representation was deficient or that Appellant was prejudiced in any way by the trial court's refusal to appoint new counsel.

**{¶51}** Accordingly, we overrule Appellant's third assignment of error.

{¶52} Having found no error prejudicial to Appellant, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs.**

**PRESTON, J., concurs in Judgment Only.**

**/jlr**