[Cite as *State v. Brown*, 2012-Ohio-3904.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,            CASE NO. 6-12-01

     v.

JOSH ALLEN BROWN,           O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. CRI 20102274

**Judgment Affirmed**

Date of Decision:  August 27, 2012

APPEARANCES:

    *Nicole M. Winget*  **for Appellant**

    *Bradford W. Bailey*  **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Josh Allen Brown, appeals the Hardin County Court of Common Pleas' judgment entry of conviction and sentence. We affirm.

{¶2} On December 21, 2010, the Hardin County Grand Jury indicted Brown on Counts One and Two of public indecency, violations of R.C. 2907.09(A)(2), (C)(3), first degree misdemeanors; Count Three of attempted gross sexual imposition in violation of R.C. 2907.05(A)(4), 2923.02(A), a fourth degree felony; Counts Four, Five, Seven, and Eight of gross sexual imposition, violations of R.C. 2907.05(A)(4) and third degree felonies; Count Six of rape in violation of R.C. 2907.02(A)(1)(b), a first degree felony; and Count Nine of contributing to the unruliness of a minor in violation of R.C. 2919.24(A)(2), a first degree misdemeanor. (Doc. No. 1).

{¶3} On January 3, 2011, Brown entered pleas of not guilty. (Doc. No. 9). On January 11, 2012, the trial court dismissed Count Two of the indictment (public indecency) and ordered that the remaining counts be renumbered upon the State's motion. (Doc. Nos. 84-85).

{¶4} On January 11-12, 2012, the matter proceeded to a jury trial. At the close of its case and after Brown's motion for acquittal, the State moved to dismiss Count Three of the amended indictment (gross sexual imposition), which the trial court granted. (Jan. 18, 2012 JE, Doc. No. 95). Thereafter, the counts were

renumbered; the State argued against the motion for acquittal as to the remaining counts; and, the trial court denied the motion. (*Id.*). The jury found Brown guilty on all remaining counts. (Doc. Nos. 87-93).

{¶5} On January 27, 2012, Brown filed a motion for a new trial. (Doc. No. 100). The matter proceeded to sentencing on that same day. The State conceded that Count Six of gross sexual imposition was an allied offense of similar import with Count Four of rape and elected to proceed to sentencing on Count Four. (Jan. 27, 2012 Tr. at 13). The trial court sentenced Brown to six months on Count One (public indecency), one year on Count Two (attempted gross sexual imposition), three years each on Counts Three and Five (gross sexual imposition), a mandatory sentence of life on Count Four (rape), and six months on Count Seven (contributing to the unruliness of a minor). (Jan. 27, 2012 Tr. at 14-17); (Doc. No. 102). The trial court ordered that the terms imposed in Counts One, Two, Three, Five, and Seven be served concurrently to the life sentence imposed in Count Four. (Jan. 27, 2012 Tr. at 17); (Doc. No. 102).

{¶6} On January 30, 2012, the State filed a response to the motion for a new trial. (Doc. No. 106). On February 1, 2012, the trial court overruled the motion. (Doc. No. 111).

{¶7} On February 2, 2012, Brown filed a notice of appeal. (Doc. No. 113). On appeal, Brown raises four assignments of error. We elect to address Brown's assignments of error out of the order presented in his brief.

### Assignment of Error No. II

**The jury erred to the prejudice of the Defendant-appellant by finding him guilty of public indecency, rape, and attempted gross sexual imposition, and gross sexual imposition.**

{¶8} In his second assignment of error, Brown argues that the jury ignored facts that supported an acquittal. Specifically, Brown argues that the victim's testimony was not credible since she never testified concerning the lesions on his penis. Brown argues that the jury was overcome by emotion since the case involved a minor child, and there was reasonable doubt that he committed the acts.

{¶9} Although Brown has not cited to any rules of law in his assignment of error, Brown appears to argue that his convictions were against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting S*tate v. Martin*, 20 Ohio App.3d 172, 175

(1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶10} The criminal offense of public indecency is codified in R.C. 2907.09, which provides, in relevant part, that "[n]o person shall recklessly [[e]expose the person's private parts], under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household." R.C. 2907.09(A)(2). The criminal offense of gross sexual imposition is codified in R.C. 2907.05, which provides, in relevant part, that "[n]o person shall have sexual contact with another * * * [who] is less than thirteen years of age." R.C. 2907.05(A)(4). The criminal offense of rape is codified in R.C. 2907.02, which provides, in pertinent part, that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender [and who] is less than thirteen years of age." R.C. 2907.02(A)(1)(b). R.C. 2923.02(A) provides, in relevant part, that "[n]o person, purposely or knowingly, * * * shall engage in conduct that, if successful, would constitute or result in the offense."

{¶11} "Sexual conduct" includes fellatio. R.C. 2907.01(A). Sexual contact "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a

breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶12} The victim, S.M., testified that Brown was her uncle, and Brown used to babysit her by himself when he lived at her grandma's house. (Jan. 11-12, 2011 Tr. at 114-120, 143). S.M. testified that Brown "did some not very good things to [her]" in her grandma's house and garage when he was watching her. (*Id.* at 118-119). S.M. testified that, in the garage, Brown "took his pants down and grabbed some oil * * * [a]nd he put it on his privates, and he squeezed it, and oil came out." (*Id.* at 120). S.M. testified that she meant "penis" or "dick" by using the term "private parts." (*Id.*). S.M. testified that, on another occasion in the garage, Brown asked her to pull her pants down, and she did. (*Id.* at 123). S.M. testified that she also pulled off her underwear and bent over, and Brown touched her vagina with his hands. (*Id.* at 125). S.M. testified that it felt like Brown was squeezing her vagina with his hand. (*Id.* at 126). S.M. testified that, on a different occasion, Brown stood in front of her while she was in a corner of her grandma's kitchen and told her "put your mouth on my dick." (*Id.* at 128). S.M. testified that Brown pulled down his pants, pointed his "dick" towards her face, and she put it in her mouth. (*Id.* at 129). She further testified that Brown asked her to put her tongue on his penis. (*Id.* at 130). S.M. testified that, on another occasion in the living room, Brown told her to pull down her pants and lay

on the floor, and Brown laid on top of her and touched his privates to her privates. (*Id*. at 132-134). S.M. also testified that, on another occasion when she was getting ready to go to bed, Brown told her to kiss him goodnight and put his tongue in her mouth. (*Id*. at 136). S.M. testified that she did not put her tongue in his mouth, but Brown put his tongue in her mouth and told her it was a French kiss. (*Id*.) On cross-examination, S.M. testified that she had a clear view of Brown's penis, and it was hairy and "kinda smooth." (*Id*. at 166, 171).

{¶13} Paula Samms, a medical forensic interviewer at Nationwide Children's Hospital, testified that she interviewed S.M. on July 8, 2010. (*Id*. at 266-273, 310). Samms testified that S.M. told her that Brown stuck his hands down her pants, that he rubbed his privates on her privates, that she put her mouth on his private, and about the garage incident where her mom walked in on them. (*Id*. at 286-287). Samms testified that S.M. indicated that Brown put his hands down her pants several times squeezing her privates, with the last time occurring in the garage.[1] (*Id*. at 287). S.M. also told Samms about a time when she did nothing but Brown got oil and squished his private until the oil squirted out onto the garage floor. (*Id*. at 287-288). S.M. told Samms that Brown asked her to lie on the living room floor with her pants down, and Brown rubbed his privates on

---

[1] Samms initially testified that S.M. said the events occurred in a barn, not a garage, but subsequently Samms testified that she misspoke, and S.M. stated the events occurred in a garage. (Jan. 11-12, 2011 Tr. at 290-291).

her privates. (*Id*. at 288). S.M. told Samms that Brown wanted to rub his privates on her privates in the garage but that it never occurred since her mom walked in on them. (*Id*.); (*Id*. at 298). S.M. also told Samms that Brown had her in the corner of the kitchen, and he put his private into her mouth and asked her to put her tongue on it. (*Id*. at 289).

{¶14} The victim's mother testified that she walked into the garage and observed Brown seated in a chair, and S.M. was right in front of him pulling up her underwear. (*Id*. at 186). S.M.'s grandmother, Judy Brown, testified that she heard S.M.'s father ask Brown how he could have touched S.M. since she was only seven years old, and Brown stated that S.M. had "come on" to him. (*Id*. at 359-363, 368-370).

{¶15} Upon review of the evidence presented at trial, we cannot conclude that Brown's convictions were against the manifest weight of the evidence. The victim testified that Brown committed several acts on different occasions constituting the offenses for which he was convicted. Brown's sole argument concerns the victim's credibility and whether the incidents actually took place since the victim did not testify concerning certain identifying marks (lesions) on his penis. We reject this argument. To begin with, a reviewing court must allow the trier of fact appropriate discretion on the credibility of the witnesses. *DeHass*, 10 Ohio St.2d at 231. Aside from that, the victim's mother saw Brown seated on a

chair in the garage with S.M. bent over in front of him with her pants down, and, when he was confronted about the incident by S.M.'s father, Brown stated that S.M. "came on" to him. The fact that a girl of tender years could not identify lesions on Brown's penis as distinguishing marks does not persuade us to doubt her credibility. Aside from the fact that S.M. was of tender years and likely had never observed an adult male penis before, the sexual encounters often occurred quickly since Brown's mother (S.M.'s grandmother) was either in the home or could be returning to the home at any time. Furthermore, S.M. was not in a position to see Brown's penis during all of the sexual encounters since Brown had S.M. bend-over, facing away from him. No manifest miscarriage of justice occurred in this case.

{¶16} Brown's second assignment of error is, therefore, overruled.

### Assignment of Error No. I

**The defendant-appellant was prejudiced by statements made by the prosecutor during closing arguments when those arguments were misstatements of the law, defense council [sic] properly objected, and the trial court overruled the objections.**

{¶17} In his first assignment of error, Brown argues that he was deprived of a fair trial when the prosecutor stated during closing argument that sexual gratification was not required, even though it is required for there to be "sexual contact" for the offense of gross sexual imposition.

**{¶18}** The test regarding prosecutorial misconduct during closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 231, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton*, 102 Ohio App.3d 28, 41 (8th Dist.1995).

**{¶19}** "Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial." *Id.*, citing *State v. Apanovitch*, 33 Ohio St.3d 19 (1987); *State v. Maurer*, 15 Ohio St.3d 239 (1984). The touchstone of the analysis is "the fairness of the trial, not the culpability of the prosecutor." *Davis*, 2008-Ohio-2, at ¶ 231, citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982).

**{¶20}** During closing argument, the prosecutor stated "[w]hy, it seems to be suggested that we have to establish that [Brown] got off sexual gratification? This type of crime isn't about, necessarily, gratification, it is about control." (Jan. 11-12, 2012 Tr. at 523). Defense counsel objected to the "characterization of what the crimes are about" since "[t]hat's a province of the Court to instruct." (*Id.*).

The trial court overruled the objection, finding that this was a subject of the testimony at trial. (*Id.*). Thereafter, the prosecutor stated, "[w]e don't have to show sexual gratification necessarily. But when you want comments and make words like rub your pussy on my dick, I can't imagine what else is on his mind." (*Id.*).

{¶21} Upon review of the record, we cannot conclude that Brown was denied a fair trial by the prosecutor's comments during closing argument. To begin with, the prosecutor's comments do not appear to be in reference to an element of any offense but the general character of sexual offenses. Aside from that, the State was not required to show that Brown was actually sexually aroused or gratified, but rather, that he touched S.M. for that purpose. R.C. 2907.01(B). Regardless, the trial court properly instructed the jury that sexual contact requires that the offender acts with the purpose of sexually arousing or gratifying himself or the victim. (Jan. 11-12, 2012 Tr. at 537, 539); R.C. 2907.01(B). A jury is presumed to follow the trial court's instructions. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 103, citing *State v. Loza*, 71 Ohio St.3d 61, 75 (1994). Consequently, we are not persuaded that the prosecutor's statements constituted misconduct, or that Brown was denied a fair trial herein.

{¶22} Brown's first assignment of error is, therefore, overruled.

**Assignment of Error No. IV**

**The trial court erred, to the detriment of the Defendant, when it ruled on the motion without scheduling a hearing**.

{¶23} In his fourth assignment of error, Brown argues that the trial court erred by denying his motion for a new trial without a hearing on the basis that trial counsel did not request a hearing when, in fact, trial counsel requested a hearing.

{¶24} "A motion for new trial pursuant to Crim.R. 33(B) is addressed to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." *State v. Schiebel*, 55 Ohio St.3d 71 (1990), paragraph one of the syllabus. An abuse of discretion is more than an error of judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶25} Brown filed a motion for a new trial alleging that the prosecutor's statement during closing argument that he was "not required to show that the Defendant or anyone obtained sexual gratification" was an irregularity in the proceedings under Crim.R. 33(A)(1), because sexual contact requires that the defendant acts for the purpose of sexually arousing or gratifying either person. (Doc. No. 100). Brown also alleged that the jury foreman knew about his previous arrest for conduct similar to the conduct presented at trial, which may have prejudiced the jury or the foreman, and this constituted juror misconduct under

Crim.R. 33(A)(2). (*Id.*).  The trial court overruled the motion, noting that Brown did not request a hearing and did not attach affidavits as required.  (Doc. No. 111).

{¶26} In his motion, Brown stated that he was entitled to a new trial "for the following reasons, as well as that which may be demonstrated at hearing upon this issue." (Doc. No. 100).  This is not a direct request for a hearing.  Regardless, the trial court's judgment is correct for different reasons, and therefore, it will not be reversed.  *State v. Brown*, 3d Dist. No. 14-08-11, 2008-Ohio-4649, ¶ 26.  Since we have found no error with respect to the prosecutor's statements during closing argument, we cannot find that the trial court abused its discretion by denying Brown's motion for a new trial on this same basis.  The trial court also did not err by denying Brown's motion for a new trial on the basis of alleged jury misconduct, since the motion was not supported by affidavit as required by Crim.R. 33(C). *State v. Gibson*, 10th Dist. No. 10AP-1047, 2011-Ohio-5614, ¶ 40.

{¶27} Brown's fourth assignment of error is, therefore, overruled.

**Assignment of Error No. III**

**Defendant-appellant was denied effective assistance of counsel, and due process of law in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article One, Section Ten of the Ohio Constitution due to the failure of defense counsel to obtain necessary affidavits in conjunction with the motion for a new trial.**

{¶28} In his third assignment of error, Brown argues that trial counsel was ineffective by failing to obtain affidavits in support of his motion for a new trial as required by Crim.R. 33(C).

{¶29} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), citing *Strickland*, 466 U.S. at 691. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley*, 42 Ohio St.3d at 142; *Strickland*, 466 U.S. at 694.

{¶30} Although trial counsel's failure to provide affidavits in support of Brown's motion may have been deficient or unreasonable performance, Brown has failed to demonstrate prejudice, i.e. that the motion would have been meritorious but for counsel's deficient performance. *State v. Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191, ¶ 73. In his motion, Brown alleged that the jury foreman had knowledge of his prior arrest for conduct similar to that presented at trial, and this knowledge may have prejudiced the jury foreman or the entire jury.

The record indicates that the jury foreman, Don Castle, was the chief probation officer and bailiff at the Hardin County Municipal Court and a law enforcement officer. (Jan. 11-12, 2011 Tr. at 66). Castle indicated that he knew the prosecutors, Mr. Bailey and Ms. Santo, and defense counsel, Mr. Fischmann. (*Id.*). Despite his knowledge of the parties and his employment, Castle indicated that he could be fair and impartial. (*Id.* at 66-67). There is no indication in the record that Castle had specific knowledge or memory of Brown's prior arrest as he alleges. Defense counsel passed for cause on the panel. (*Id.* at 69). Brown could have questioned Castle about his previous arrests in-camera, or Brown could have simply dismissed Castle from the jury using a pre-emptory challenge—he did neither of these things. Under these circumstances, the trial court could have denied Brown's motion for a new trial under the invited error doctrine. *See State v. Seiber*, 56 Ohio St.3d 4, 17 (1990). Additionally, since the record fails to demonstrate that Castle had any specific knowledge or memory of Brown's prior arrest, there is no indication that he was, in fact, prejudiced against Brown. Finally, Brown has failed to indicate who could have submitted affidavits in support of his motion. Consequently, we are not persuaded that the trial court would have granted Brown's motion but for trial counsel's failure to attach affidavits.

{¶31} Brown's third assignment of error is, therefore, overruled.

**{¶32}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**